IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARK A. MEHNER,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>FURNITURE DESIGN STUDIOS, INC.; PANERA, LLC; JOHN DOE; and JANE DOE,<br><br>　　　　　　　Defendants. | 8:22CV168<br><br>**MEMORANDUM<br>AND ORDER** |

    This matter is before the Court on defendant Furniture Design Studios, Inc.'s ("FDS") Motion for Summary Judgment (Filing No. 18). *See* Fed. R. Civ. P. 56; NECivR 7.1 and 56.1. FDS seeks prejudicial dismissal of all of plaintiff Mark A. Mehner's ("Mehner") claims against it. Mehner asserts the motion should be denied on the merits.[1] For the reasons stated below, the motion is granted.

---

[1] Mehner's opposing brief was late, *see* NECivR 7.1(b)(1)(B), but the Court has considered it anyway. In his brief, Mehner alternatively asks that any decision be deferred until discovery is no longer "ongoing." The Court has granted that request; discovery is now closed. The deadline for written discovery was January 20, 2023, and for depositions was February 10, 2023. Neither party has filed (or requested leave to file) additional briefing or a motion to compel.

    More than ten days after FDS's motion was fully briefed, Mehner filed—pursuant to Rule 56(d)—two motions to "defer consideration" of FDS's motion "to allow for completion of discovery" (Filing Nos. 36 and 38). But he inexplicably filed them after discovery closed, again failed to comply with the local rules for motion practice, *see* NECivR 7.1(a)(1)(A), and raised an "additional" argument for denying summary judgment that is based on evidence (Filing No. 33-1) available to him when he filed his opposition brief. A motion to defer under Rule 56(d) is not merely a means for a second bite at the apple in opposing summary judgment. *See* Fed. R. Civ. P. 56(d) (requiring a nonmovant requesting a continuance to show "that, for specified reasons, it cannot present facts essential to justify its opposition"). At any rate, Mehner's tardy motions to defer are moot.

I.   **BACKGROUND**

In this diversity case, *see* 28 U.S.C. § 1332(a)(1),[2] Mehner seeks to recover for physical injuries he allegedly suffered on April 11, 2017, when the chair he was sitting on at one of defendant Panera, LLC's ("Panera") restaurants in Omaha, Nebraska, "failed, collapsed and broke," causing him to fall to the floor. Panera allegedly purchased the chair from FDS, who "was the designer and/or manufacturer . . . of the chair." The chair left FDS's possession and control in September 2009 and was used without incident for nearly eight years before it broke.

On April 9, 2021, Mehner sued Panera and FDS in Nebraska state court (Filing No. 1-1). FDS promptly removed the case to federal court pursuant to 28 U.S.C. §§ 1441(b) and 1446 based on diversity jurisdiction (Filing No. 1). Mehner asserts negligence and spoliation claims against Panera, and strict-liability and negligent-design claims against FDS. The parties appear to agree Nebraska substantive law governs Mehner's claims. *See*, *e.g.*, *Hiscox Dedicated Corp. Member, Ltd. v. Taylor*, 53 F.4th 437, 439 (8th Cir. 2022).

On July 19, 2022, the Court entered a Final Progression Order (Filing No. 16) setting a deadline of November 18, 2022, for Mehner's "complete expert disclosures for all experts expected to testify at trial." (Footnote omitted.) Mehner belatedly identified his healthcare providers as potential experts on causation and damages (Filing No. 17). He also stated his "intention to have access to [an exact] specimen [of the chair that broke] for examination, testing, report and testimony by an expert in the field of (engineering-based) failure analysis" to the extent either defendant had such a specimen. Mehner further asserted, "This designation is a best effort under the time restrains there have been, and

---

[2]The Court has disregarded the Doe defendants for purposes of diversity at this point. *See Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 426 (1st Cir. 2007) ("The presence of John Does does not destroy diversity jurisdiction in cases removed to federal court."); 28 U.S.C. § 1441(b)(1).

counsel intends to, and will seasonably supplement or amend the foregoing as the need arises."

That same day, Mehner served his first set of requests for production on Panera and FDS but did not request a specimen of the chair. FDS reports that he never did. Mehner avers FDS responses to his requests for production were "evasive or incomplete"—though he never moved to compel a different response. FDS denies that charge. As noted above, the deadlines for discovery have now passed. Motions to compel written discovery were due by February 3, 2023.

## II. DISCUSSION

### A. Standard of Review

On a motion for summary judgment, the Court generally views the evidence "in the light most favorable to the nonmoving party" and draws all reasonable inferences supported by the record in his favor. *See Corkrean v. Drake Univ.*, 55 F.4th 623, 630 (8th Cir. 2022) (quoting *Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1033 (8th Cir. 2007)). Where, as here, the nonmoving party "fails to properly address" the movant's assertions of fact, the Court can, among other things, treat those facts as "undisputed for purposes of the motion."[3] Fed. R. Civ. P. 56(e)(2); *accord* NECivR 56.1(b)(1)(B) ("Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response.") (underlining omitted).

Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As a general rule, summary judgment is proper only after the nonmovant has had adequate time for discovery." *Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 894 (8th Cir. 2014) (quoting *Hamilton v. Bangs, McCullen, Butler, Foye &*

---

[3]Rather than dispute FDS's fact statements, Mehner takes them (and FDS's evidence) "all at face value," arguing FDS is still not entitled to judgment as a matter of law.

*Simmons, L.L.P.*, 687 F.3d 1045, 1049 (8th Cir. 2012)). Cases "involving only questions of law" are "particularly appropriate for summary judgment." *TeamBank, N.A. v. McClure*, 279 F.3d 614, 617 (8th Cir. 2002); *accord Yassin v. Weyker*, 39 F.4th 1086, 1090 (8th Cir. 2022) (noting questions of law can properly be decided on summary judgment absent a genuine dispute of material fact).

### B. Expert Testimony

Mehner asserts claims of strict liability and negligent design against FDS. The "central question" in a strict-liability claim "is whether the product was defective," *O'Brien v. Cessna Aircraft Co.*, 903 N.W.2d 432, 447 (Neb. 2017), that is, whether it was "unreasonably dangerous" to an ordinary user, *Pitts v. Genie Indus., Inc.*, 921 N.W.2d 597, 608 (Neb. 2019). To prove that claim, Mehner must show

> (1) the defendant placed the product on the market for use and knew, or in the exercise of reasonable care should have known, that the product would be used without inspection for defects; (2) the product was in a defective condition when it was placed on the market and left the defendant's possession; (3) the defect is the proximate or a proximately contributing cause of the plaintiff's injury sustained while the product was being used in a way and for the general purpose for which it was designed and intended; (4) the defect, if existent, rendered the product unreasonably dangerous and unsafe for its intended use; and (5) the plaintiff's damages were a direct and proximate result of the alleged defect.

*Pitts*, 921 N.W.2d at 609.

In a negligent-design claim, the focus is on the reasonableness of the manufacturer's conduct "in view of the foreseeable risk of injury." *Jay v. Moog Auto., Inc.*, 652 N.W.2d 872, 879 (Neb. 2002). To prove that claim, Mehner must "establish some evidence of duty, breach, causation, and damages." *Id.* "Negligence is never presumed, and the mere happening of an accident does not prove negligence as a matter of law." *Scholl v. County of Boone*, 549 N.W.2d 144, 148 (Neb. 1996).

4

FDS contends Mehner cannot meet his burden under either theory because he has not designated an expert to provide evidence as to defect or negligence and causation. FDS also faults Mehner for delaying his discovery requests and for not requesting a "specimen" chair for testing and inspection. Citing several broken-chair cases from other jurisdictions, FDS maintains that "[t]he fact that the subject of this product liability action is a chair does not" eliminate the need for expert testimony. *See*, *e.g.*, *Nobles v. Staples, Inc.*, 150 A.3d 110, 116 (Pa. 2016) (concluding an expert's "speculation" about why a chair broke was "insufficient to satisfy the requirements for expert evidence"); *Hunt v. Kmart*, No. A-5650-04T3, 2006 WL 799189, at *3 (N.J. Super. Ct. App. Div. Mar. 30, 2006) (unpublished per curiam) (upholding summary judgment because the "plaintiff did not offer expert evidence sufficient to carry his burden of proof on his design defect claim"); *Cunningham v. Mich. Healthcare Pros., P.C.*, No. 354236, 2021 WL 1711806, at *6 (Mich. Ct. App. Apr. 29, 2021) (unpublished per curiam) (noting "chairs sometimes fail in the absence of negligence" and do wear out over time).

FDS also points out that the chair that broke "left FDS's possession or control in August 2009 and was in use at Panera's restaurant for nearly eight years before the collapse without prior incident." According to FDS, Mehner "has no evidence to demonstrate that the chair was in a defective condition when it left FDS's possession or control" and "cannot demonstrate that the collapse was not the result of misuse or some other intervening cause." *See*, *e.g.*, *Rahmig v. Mosley Mach. Co.*, 412 N.W.2d 56, 69 (Neb. 1987) ("In a products liability action, the plaintiff has the burden to prove that the alleged defect existed when the product left the manufacturer.").

Mehner acknowledges he did not disclose a liability expert but denies that means he cannot meet his burden of proof. In support, he cites *Laird v. Scribner Coop, Inc.*, for the proposition that relying "on eyewitnesses alone is not fatal when the defect is *obvious to a layman*, but when standards of performance of the product are not generally known, other evidence, usually expert testimony, is necessary to prove proper or acceptable standards of

5

performance." 466 N.W.2d 798, 804 (Neb. 1991) (emphasis in *Laird*) (quoting *Durrett v. Baxter Chrysler-Plymouth, Inc.*, 253 N.W.2d 37, 39-40 (Neb. 1977) (warranty claim)). Noting "[a] chair is not a complex apparatus," Mehner asserts "[t]he standards [for testing commercial grade chairs] are relatively obvious, and well within the ken of an ordinary 'layman.'" (Quoting *Laird*, 466 N.W.2d at 804).

Mehner's response is not wholly without merit. Although "expert testimony pointing to a specific defect" is often the best way to establish a defect, it is not always required under Nebraska law. *O'Brien*, 903 N.W.2d at 447; *see also Pitts*, 921 N.W.2d at 609 (requiring expert testimony to support fact findings "as to technical matters beyond the scope of ordinary experience"). "[T]he test is whether the particular issue can be determined from the evidence presented and the common knowledge and usual experience of the fact finders." *Id.*

Mehner aptly notes that restaurant chairs are not particularly complex. So, it is at least conceivable that he could—depending on the other available evidence—create a triable issue as to defect or negligence and causation with respect to FDS without expert testimony. *See id.* He simply hasn't done that.

"To survive summary judgment, a plaintiff 'must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.'" *Rickard v. Swedish Match N. Am., Inc.*, 773 F.3d 181, 184 (8th Cir. 2014) (quoting *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994)). Mehner summarily assures the Court that the lack of an expert does not indicate that he cannot meet his burden of demonstrating a genuine dispute of material fact or that he "will not be able to make his prima facie showing under either of his strict liability or negligence theories against FDS."

But he makes little effort to explain how he expects to meet his burden at this stage without an expert. He not only fails to identify a specific defect in the chair and state how

6

that defect or FDS's design caused it to break, but he also fails to provide any credible evidence to support his claims against FDS—aside from the mere fact that FDS ostensibly delivered what he calls "the exploding café chair." *Cf. Crawford v. Sears Roebuck & Co.*, 295 F.3d 884, 886 (8th Cir. 2002) (Arkansas law) (finding "a failure of proof on an essential element of the plaintiff's case" on summary judgment because "[t]he fact that an accident occurred is not proof that" a product was defective); *see also Scholl*, 549 N.W.2d at 148. "A [claim] founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Beaulieu v. Stockwell*, 46 F.4th 871, 876 (8th Cir. 2022) (alteration in original) (quoting *Yarborough v. DeVilbiss Air Power, Inc.*, 321 F.3d 728, 730 (8th Cir. 2003)).

To be sure, Mehner briefly mentions what he describes as the Business and Institutional Furniture Manufacturer's Association ("BIFMA") "standard for testing commercial grade chairs, BIFMA X5.1." He opines the standard is "elementary, indicating test standard[s] for the strength of a chair back, stability, leg and seat strength, and cycle (repetitions) strength, all very simple and straight forward tests." He further reports that the American National Standards Institute ("ANSI") "has adopted the same standard." But again, Mehner does not explain how he proposes to establish those standards as relevant in this case or to present them (and any supporting evidence) to a jury without expert testimony. Though not rocket science, such safety and performance standards are sufficiently technical to be "beyond the scope of ordinary experience" of most jurors. *Pitts*, 921 N.W.2d at 609.

Despite ample opportunity, Mehner simply has not presented "sufficient probative evidence" to withstand summary judgment on his strict-liability and negligent-design claims against FDS. *Rickard*, 773 F.3d at 184; *see also Crawford*, 295 F.3d at 885-86 (noting that an expert testified about an ANSI safety standard related to load ratings and concluding that the fact that a product buckled under "a normal load is not enough to establish that it was defectively designed or that it was sold in a defective condition").

C.  **Malfunction Theory**

In very limited circumstances, the malfunction theory permits a plaintiff to "prove a product defect circumstantially, without proof of a specific defect." *O'Brien*, 903 N.W.2d at 448 (quoting *Roskop Dairy v. GEA Farm Tech.*, 871 N.W.2d 776, 796 (Neb. 2015), *disapproved of on other grounds by Weyh v. Gottsch*, 929 N.W.2d 40, 62 (Neb. 2019)). Under Nebraska law,

> [a] plaintiff who wishes to rely on the malfunction theory to establish an unspecified defect must plead and prove that (1) the incident causing the harm was of a kind that would ordinarily occur only as the result of a product defect and (2) the incident was not, in the particular case, solely the result of causes other than a product defect existing at the time of sale or distribution.

*O'Brien*, 903 N.W.2d at 448; *see also Roskop Dairy*, 871 N.W.2d at 799 (clarifying that the theory only applies to the element of defect and thus does "not serve to create a material issue on the element of proximate cause").

The Nebraska Supreme Court has held that the malfunction theory can apply "in a strict liability manufacturing defect claim" but has not applied it to a design-defect claim. *Pitts*, 921 N.W.2d at 614. It is far from clear that it would, given the nature and purpose of malfunction theory as a means "to bridge the gap caused by missing evidence" and the significant differences between a manufacturing defect and a design defect. *Id.* at 609, 613-14 (noting the plaintiff alleged specific design defects and explaining the "theory is not available when specific defects are alleged").

In any event, the Nebraska Supreme Court has urged "caution" in using the theory in light of its "narrow" scope and "natural limitations." *O'Brien*, 903 N.W.2d at 448. And other distinguished courts have been reluctant to infer a product defect based on circumstantial evidence when the product has been in service for years without incident. *See Crawford*, 295 F.3d at 886 (explaining the need for "evidence tending to eliminate other possible causes for the failure, including ordinary wear and tear or previous misuse of the product," was greater when the product had been in service for a long period of time

before the alleged injury and its history after the sale was unknown); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601-02 (Tex. 2004) (listing cases).

In its brief, FDS predicts Mehner will attempt to rely on the malfunction theory "to circumvent his failure to designate a liability expert in this matter." As FDS sees it, Mehner cannot rely on that theory to avoid summary judgment because he did not plead and prove the theory as required under Nebraska law. *See O'Brien*, 903 N.W.2d at 448 (stating a plaintiff's "failure to plead the malfunction theory at all prevents him from relying on it"). FDS further contends any claim based on malfunction theory fails on the merits because the chair that broke was shipped to Panera in about August 2009 and "had been out of FDS's possession or control for nearly *eight years* at the time of the alleged incident."

Mehner neither affirmatively asserts the malfunction theory nor directly responds to FDS's strong arguments that he cannot rely on it here. Instead, Mehner quotes a large block of the Nebraska Supreme Court's discussion in *Roskop Dairy* of a nonexhaustive list of the types "of circumstantial evidence that may be used to support a reasonable inference of a specific defect," 871 N.W.2d at 797, and suggests he could better support his claims if he had gotten fuller discovery responses, including to his request to Panera "for documentation of other similar instances occurring in the past."

But beyond those discovery complaints—which mean little in the absence of a motion to compel—Mehner does not identify either the type or quantum of evidence required to support a reasonable inference that the chair was defective when it left FDS's control and that FDS is liable for his injuries, let alone sufficient evidence to rule out all other causes. Mehner likewise does not provide any authority or argument to suggest that the Nebraska Supreme Court would apply the malfunction theory under the facts of this case, particularly given the large amount of time that has passed since FDS delivered the chair to Panera. *See Crawford*, 295 F.3d at 886; *Ford Motor Co.*, 135 S.W.3d at 601-02.

Failing to obtain or marshal available evidence does not render the evidence unavailable for purposes of malfunction theory. *See Roskop Dairy*, 871 N.W.2d at 796 (noting courts too often misapply malfunction theory "in situations in which evidence is actually available"); *cf. Hunt*, 2006 WL 799189, at *3 (noting the loss of the actual chair that collapsed would not prevent an expert from identifying a design defect in a similar chair). On this record, malfunction theory is of no help to Mehner. *See O'Brien*, 903 N.W.2d at 448.

Based on the forgoing,

IT IS ORDERED:
1. Plaintiff Mark A. Mehner's Motion to Defer (Filing No. 36) and Amended Motion to Defer (Filing No. 38) are denied.
2. Furniture Design Studios, Inc.'s Motion for Summary Judgment (Filing No. 18) is granted.
3. Mehner's claims against Furniture Design Studios, Inc. are dismissed with prejudice.

Dated this 3rd day of March 2023.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge