IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARK A. MEHNER,<br><br>    Plaintiff,<br><br> vs.<br><br>PANERA, LLC, a Foreign Limited Liability Company,<br><br>    Defendant. | 8:22CV168<br><br>**MEMORANDUM AND ORDER** |

Defendant has moved for a protective order, arguing that requiring Panera to respond to Plaintiff's Request for Production No. 13, even as crafted and narrowed by the court, is unduly burdensome and disproportionate to the needs of the case. (Filing No. 96). "The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Vallejo v. Amgen, Inc., 903 F.3d 733, 742 (8th Cir. 2018) (emphasis added).

> [A] court can—and must—limit proposed discovery that it determines is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit—and the court must do so even in the absence of a motion.

Id. (quoting Carr v. State Farm Mut. Auto. Ins., Co., 312 F.R.D. 459, 468 (N.D. Tex. 2015)). The federal discovery rules must be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

Discovery disputes, including the proportionality of discovery requests, can and usually are decided on a written record. But in this case, in the parties' initial filings, (Filing Nos. 96-102), Plaintiff submitted no evidence in support of his claim that the damages at issue are extensive, and Defendant submitted no admissible evidence explaining the burden of responding to Plaintiff's Request for Production No. 13. The court therefore scheduled an evidentiary hearing.

That hearing was held on November 3, 2023. Having now considered the parties' evidence, the court finds Defendant's motion for protective order must be granted.

ANALYSIS

Plaintiff's Request No. 13 and Defendant's objection are as follows:

REQUEST NO. 13: Please produce any document indicating any similar incident(s) concerning the Product, as it was used in the normal course of business, in any Panera store or café, since June 1, 2009.

RESPONSE: Defendant Panera objects for the reason that this Request is overly-broad, unduly burdensome, vague and ambiguous. Defendant further objects that the information sought is not relevant, is not reasonably calculated to lead to the discovery of admissible evidence nor to the discovery of information which in turn will lead to the development of relevant and admissible information.

Discovery is ongoing. Defendant Panera reserves the right to supplement its response to this Request.

(Filing No. 93-1, at CM/ECF p. 4). After hearing the parties' respective arguments on Panera's objections, the court held that Panera must disclose documentation of "similar incident(s) concerning the Product"—defined by the court as incidents wherein a chair of the same make and model as the chair in this case collapsed

2

when the chair back split off down the rear chair legs—which occurred between June 1, 2009 through April 11, 2017 at restaurants owned by Panera, LLC (and not its franchisees). Defendant was afforded the opportunity to file a motion for protective order if compliance with Request No. 13, as stated by the court, was disproportionate to the needs of the case.

During the evidentiary hearing, Defendant submitted evidence that Panera's record-keeping system changed in early 2011, and therefore any computerized search for incident reports at Panera-owned restaurants must be limited to the time frame of 2011 through April 11, 2017. ([Filing No. 117-1](#)). As to that time frame, there were 75 reports that a chair "broke," but Panera is unable to perform a computerized search which limits or sorts results by the make or model of chair or the mechanism of chair collapse. As explained by Panera, to determine which (if any) of the reports are for "similar incident(s) concerning the Product,"

> Panera would need to review each and every document/incident; cross-reference the information without the relevant date and location in the document with historic furniture receipts and any other available data in an effort to determine what make/model of chair was involved; and attempt to contact any Panera employees referenced in the document or employed at the cafe at the time so as to gather additional detail about how and where the chair broke. It is unclear and highly doubtful whether these efforts would be successful in gathering the information necessary to determine which of the 172 documents may be responsive, and again, it seems highly unlikely. Panera anticipates that it would take approximately 400 working hours to gather this information, EXCLUDING employee interviews. If employee interviews are required and/or conducted, there is no way to calculate the time to find and attempt to interview current and former employees.

[Id](#).

Plaintiff claims "the scope of the search or the concept that the defendant has been using to go forward with its search has been drawn in such a fashion that it was destined for failure. . . ." (Filing No. 119, audio file, 31:47-32:05). But Panera performed the search as requested by Plaintiff, and the search parameters it used were defined by and are directly related to the language of Plaintiff's Request for Production No. 13. Plaintiff argues that to comply with Request No. 13, Panera must gather all prior incident reports involving chairs for all Panera stores nationwide[1] dating back to February 2012, the earliest date of incident reports stored in Defendant's existing computer database, irrespective of the type of chair at issue or how and why the reported incidents occurred. (Filing No. 102, at CM/ECF pp. 9-10 (incorporating the February 2012 search limitation referenced in Filing No. 99-1, at CM/ECF p. 4). As interpreted by Plaintiff, Request No. 13 is <u>facially</u> overbroad, encompasses irrelevant information, and is disproportionate to the needs of the case.[2] Moreover, Plaintiff's interpretation of Request No. 13 essentially strikes the words "similar" and "concerning the

---

[1] As explained by the parties during discovery hearings, in addition to an unknown number of franchise restaurants, there are over 2000 company-owned Panera restaurants in the United States.

[2] The court has not re-crafted the discovery request to limit its geographical area or time period. Plaintiff strongly advocates that Panera must respond to the request as drafted, has not conceded that limiting the request may be appropriate, and has not requested or suggested a more limited version of Request No. 13. Moreover, this court's civil case management practices, incorporated by reference in the court's scheduling order, (Filing No. 10, ¶ 1), and acknowledged as reviewed by counsel, (Filing No. 14, at CM/ECF p. 11), state that when formal motion practice is necessary because the court's efforts to resolve a discovery dispute were insufficient, "the magistrate judge will enter a ruling based on the language of [the disputed] discovery request." See, Civil Case Management Practices at p. 8. The court will not tailor or re-draft discovery on behalf of the requesting party to assure compliance with the proportionality requirements of the rules. "Rather, the court will overrule or sustain the objections to the discovery request as written and presented to the magistrate judge." Id.

Product" from the language of the Request, thereby removing any limitation to chair accidents that are potentially relevant to this case.

Plaintiff argues Panera's burden of production is outweighed by the needs of the case, arguing the amount in controversy and the importance of the requested information justifies the burden of production. Panera has moved for summary judgment, claiming it lacked notice of any defect in the chair at issue or its design. The court agrees that evidence of prior "similar incident(s) concerning the Product" – if substantially similar to the accident in this case – may be relevant to show Panera was on notice. However, as to the amount in controversy, while Defendant acknowledges that Plaintiff was injured when the chair collapsed, the court must consider the nature and extent of those injuries when deciding whether Panera must incur the burden of responding to Request No. 13. Here, Plaintiff has failed to disclose any experts, the expert witness disclosure deadline has passed, and at the evidentiary hearing on November 3, 2023, Plaintiff made no attempt to offer expert testimony or an expert's affidavit showing the medical bills, lost past and future earnings, and lost Social Security benefits described in Plaintiff's affidavit (Filing No. 113) were causally related to injuries sustained in the accident at issue, or that the medical expenses were fair, reasonable, and necessary.

Rule 26(b) requires the court to consider "whether the burden or expense of the proposed discovery outweighs its likely benefit." Here, Plaintiff argues the value of his case is substantial, but at a stage of litigation where supporting evidence should be available, offered no admissible evidence to support his claim. Defendant submitted evidence that producing responsive documents—if they can be produced at all—will be very difficult and the burden of doing so will be substantial. Based on the evidence presented, the court finds the burden and

expense of responding to Request No. 13 is disproportionate to the needs of the case.

Accordingly,

IT IS ORDERED:

1) Defendant's motion for a protective order, ([Filing No. 96](#)), is granted.

2) Plaintiff's response to Panera's motion for summary judgment shall be filed on or before November 27, 2023, with any reply filed on or before December 4, 2023.

Dated this 6th day of November, 2023.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge